**72 So.2d 402**

**ROSS JEWELERS, Inc. v. STATE.**

**3 Div. 639.**

Supreme Court of Alabama.

Nov. 5, 1953.

Rehearing Denied April 26, 1954.

Vincent F. Kilborn, Mobile, for appellant.

Si Garrett, Atty. Gen., and H. Grady Tiller, Asst. Atty. Gen., for appellee.

D. N. Hamilton and Bernard Lobman, Montgomery; Leader, Tenenbaum, Perrine & Swedlaw, Birmingham, for American Retail Federation et al.

Lange, Simpson, Robinson & Somerville, Birmingham, for Alabama Pharmaceutical Ass'n et al.

A. V. Federle, Jr., New York City, amici curiae, for National Dry Goods Ass'n.

STAKELY, Justice.

On application for rehearing we have concluded that the original opinion should be withdrawn and the present opinion substituted in lieu thereof. As we shall show the case involves certain phases of the Alabama Sales Tax Statutes where goods are sold and where the federal statutes require the imposition of what is known as the Federal Retail Excise Tax, commonly known as the Luxury Tax. While we feel that the opinion should be rewritten, the result under the facts in the case at bar will not be different, as we shall also undertake to show.

This is an appeal from a decree of the Circuit Court of Montgomery County, in Equity, sustaining the demurrer of the State of Alabama to a bill of complaint filed by Ross Jewelers, Inc., a corporation.

The State Department of Revenue made an assessment for a sales tax liability against Ross Jewelers, Inc. (appellant) in the amount of $7,441.15, covering the period from November 21, 1946, through July 31, 1948. This assessment consists of sales tax of $6,006.21, penalty thereon of $717.47 and interest of $717.47. Ross Jewelers, Inc. appealed to the Circuit Court of Montgomery County as provided by § 140, Title 51, Code of 1940. The bill of complaint was filed as aforesaid and the demurrer thereto by the State of Alabama sustained and hence this appeal.

Ross Jewelers, Inc. is in the retail jewelry business and was so engaged during the time involved in this suit. As such it sold watches, jewelry, ornamental jewelry and items which were and are the subject of retailer's excise taxes imposed on sales of jewelry, luggage, etc., by Chapter 19 of the Internal Revenue Code of the United States, together with § 552 of the Revenue Act of 1941, 26 U.S.C.A. § 2400 et seq., and Chapter 9A of the Internal Revenue Code of the United States, together with § 210 of the Revenue Act of 1940 as amended by § 302 of the Revenue Act of 1943 and by the Excise Tax Act of 1947, 26 U.S.C.A. § 1650 et seq., on sales by retailers of jewelry as the term is defined in such taxing legislation.

During the period in question (from November 21, 1946 through July 31, 1948), the taxpayer advertised for sale jewelry as defined in such laws for a fixed price "tax included" and upon a sale being made did add to the price "tax included" two percent sales tax imposed by Alabama law, whether on a cash sale or an installment sale. In all cases the amount of the Alabama Sales Tax was billed as a separate item. The total sales tax of $6,006.21 includes the amount of $155.65 from November 1, 1946 through December 31, 1946, $4,086.51 for the period from January 1, 1947 through December 31, 1947 and $1,764.05 for the period from January 1, 1948 through July 31, 1948. It is conceded by the taxpayer that of this total amount $4,762.83 was due and owing by the taxpayer. But the taxpayer claims that it does not owe $1,244.18 of the amount embraced in the $6,006.21 assessment, for the reason that the amount of $1,244.18 resulted from the inclusion in the "gross proceeds of sale" or "gross receipts"

the federal excise tax as a measure of the Alabama Sales Tax of two percent.

In order to illustrate the taxpayer's contention, the bill of complaint shows an hypothetical sale of a watch for the price of $100, Federal excise tax included. The taxpayer admits that it charged its customers an Alabama Sales Tax of $2.00 thereon, but that in reporting and paying the tax to the State of Alabama it did not report and pay the full $2.00 but only $1.84 thereof. The Federal excise tax on jewelry during the period covered by the transaction involved was ten percent. The taxpayer so far as its customer was concerned billed the $100 watch to the customer as follows:

Sale of one watch "Federal tax included" ........................$100.00
Alabama Sales Tax ............ 2.00
                            _____
    Total Collected ..............$102.00

However, notwithstanding the taxpayer charged and collected from its customer the sales tax of $2, measuring the sales tax by $100 (the price of the watch "Federal excise tax included"), when it came to reporting and paying the tax to the State of Alabama, it set up the transaction as follows:

Actual sale price ......:..........$ 90.91
2% sales tax on this amount ....... 1.84
10% Federal tax on $90.91 ........ 9.09
                            _____
    Total ......................$101.84

The position of the State is that the "gross proceeds of sales" or "gross receipts" of the watch in question was $100.00, Federal excise tax included. According to the insistence of the State, this amount should properly be used as the measure of the tax of $2. It is the insistence of the State that the additional sales tax which the State of Alabama is entitled to collect from the taxpayer amounts in the aggregate to $1,244.18. This is the additional tax assessed by the State Department of Revenue against the appellant and which the appellant claims that it does not owe. Returning to the hy-

pothetical case, the State Department of Revenue contends that the appellant was required to pay taxes on the basis of a sale at retail with a sale price of $100 and not on the basis of a sale price of $90.91, as contended by the taxpayer.

1. The first question which must be determined on this appeal is whether or not the Federal excise tax which was included in the price of the jewelry in question is properly included in "gross proceeds of sales" or "gross receipts" in measuring the Alabama Sales Tax. The Alabama Sales Tax is levied by § 753, Title 51, Code of 1940, which provides as follows:

"There is hereby levied, in addition to all other taxes of every kind now imposed by law, and shall be collected as herein provided, a privilege or license tax against the person on account of the business activities and in the amount to be determined by the application of rates against gross sales, or gross receipts, as the case may be, as follows: (a). Upon every person, firm or corporation engaged, or continuing within this state, in business of selling at retail any tangible personal property whatsoever, including merchandise and commodities of every kind and character, (not including, however, bonds or other evidences of debt or stocks), an amount equal to two percent of the gross proceeds of sales of the business except where a different amount is expressly provided herein. * * *"

Without question Ross Jewelers, Inc., under the foregoing statute, had the burden to collect from its purchasers the amount of tax due on a sale and the State looks to it for the tax. The obligation to collect the tax and remit it to the State is not disputed in this case. Merriwether v. State, 252 Ala. 590, 42 So.2d 465, 11 A.L.R. 2d 918; Doby v. State Tax Commission, 234 Ala. 150, 174 So. 233.

It is obviously necessary to understand the meaning of the terms "gross proceeds of sales" or "gross receipts", which appear in the foregoing statute. The legislature has defined the meaning of these terms in § 752, Title 51, Code of 1940, as follows:

"(f). The term 'gross proceeds of sales' means the value proceeding or accruing from the sale of tangible personal property (and including the proceeds from the sale of any property handled on consignment by the taxpayer), including merchandise of any kind and character without any deduction on account of the cost of the property sold, the cost of the materials used, labor or service cost, interest paid, *or any other expenses whatsoever,* and without any deductions on account of losses; provided that cash discounts allowed and taken on sales shall not be included, and 'gross proceeds of sales' shall not include the sale price of property returned by customers when the full sales price thereof is refunded either in cash or by credit." [Italics supplied.]

The term "gross receipts" is defined in subsection (h) as follows:

"(h). The term 'gross receipts' means the value proceeding or accruing from the sale of tangible personal property, including merchandise and commodities of any kind and character, all receipts actual and accrued, by reason of any business engaged in, (not including, however, interest, discounts, rentals of real estate or royalties) and without any deduction on account of the cost of the property sold, the cost of the materials used, labor or service cost, interest paid, *or any other expenses whatsoever* and without any deductions on account of losses." [Italics supplied.]

■■ It will be noticed that in each of the aforesaid definitions the legislature saw fit to use the expression "or any other expenses whatsoever". On the original hearing we held that the words "or any other expenses whatsoever" included the Federal excise tax. In this conclusion we now believe we were in error. Under the maxim of construction of *ejusdem generis,* "where general words follow the enumeration of particular classes of persons or things, the general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated." Goode v. Tyler, 237 Ala. 106, 186 So. 129, 132.

We shall consider the matter, however, further than by merely referring to the foregoing maxim of construction. To do this the pertinent federal statutes and treasury regulations should be considered in order to determine the nature of the federal excise tax. We set out as briefly as possible the pertinent portions of the statutes involved and a reference to the treasury regulations.

Section 2400, Internal Revenue Code, Title 26 U.S.C.A. provides as follows:

"There is hereby imposed upon the following articles sold at retail a tax equivalent to 10 per. centum (now 20% with certain exceptions under Section 1650, I.R.C.) of the price for which so sold: All articles commonly or commercially known as jewelry * * *."

Section 2403(a) provides:

"Every person who sells at retail any article taxable under this chapter shall make monthly returns under oath in duplicate and pay the taxes imposed by this chapter * * *.

"The tax shall, without assessment by the Commissioner or notice from the collector, be due and payable * * * at the time so fixed for filing the return."

Section 2403(c) provides:

"In determining * * * the price for which an article is sold, there shall be included any charge for coverings and containers of whatever nature,

and any charge incident to placing the article in condition packed ready for shipment, but there shall be excluded the amount of tax imposed by this chapter, whether or not stated as a separate charge. A transportation, delivery, insurance, installation, or other charge (not required by the foregoing sentence to be included) shall be excluded from the price only if the amount thereof is established to the satisfaction of the Commissioner, in accordance with the regulations. There shall also be excluded, if stated as a separate charge, the amount of any retail sales tax imposed by any State * * *, whether the liability for such tax is imposed on the vendor or the vendee."

Section 2409 provides:

"Whoever in connection with the sale * * * or offer for sale * * * of any article taxable under this chapter, makes any statement, written or oral, in advertisement or otherwise, intended or calculated to lead any person to believe that the price of the article does not include the tax imposed by this chapter, shall on conviction * * * be punished."

Section 2410 provides:

"The Commissioner, with the approval of the Secretary, shall prescribe and publish all needful rules and regulations for the enforcement of this chapter."

Under the authority of Section 2410, Regulation 51, Sections 320.0 to 320.9 were issued. For a convenient table of the provisions of the Regulation and the constructions given the Regulation and the statute by the courts see 534 CCH, Paragraph 2648–R et seq. The Regulation itself deals with the several taxes on jewelry, furs, toilet preparations and luggage but the principle involved in all is the same. Briefly the Regulation prescribes that the law imposes the tax on taxable articles "sold at retail." Section 320.3 provides that every person who sells at retail an article covered by the Regulation is liable for the tax. The tax attaches under Section 320.4 of the Regulation when title to the article sold passes from the retailer to a purchaser. The basis of the tax is the price for which the taxable article is sold.

By Section 320.7 of the Regulation it is provided:

"The tax imposed by Chapter 19 of the Internal Revenue Code on the retailer's sale of an article, is by statute not a part of the taxable price of the article. Where Federal Tax is billed as a separate item the amount should be excluded in determining the sale price upon which the tax is to be computed. Where the Federal Tax is not billed as a separate item it will be presumed that the amount of tax is included in the price charged and the amount shall be excluded by an appropriate computation in determining the taxable sale price."

Section 320.30 of the Regulation provides that the tax attaches to the sale by the retailer of articles commercially known as jewelry, etc.

By Section 320.70 returns of the sales must be made monthly and the taxes paid at that time.

26 U.S.C.A. § 3325 relating to Miscellaneous taxes provides that whoever in connection with the sale or lease makes any statement written or oral intended or calculated to lead another to believe that any part of the price for which the article is sold or leased or offered for sale consists of a tax imposed under the authority of the United States or ascribing a particular part of the price to a tax imposed under authority of the United States knowing that the statement is false or the tax is not so great as the portion of the price ascribing the tax, shall be guilty of a misdemeanor. And of course Section 2409 expressly prohibits the making of any statement calculated to lead others to believe that the price of the article does not include the excise tax.

It will be noticed from the foregoing federal statutes and the treasury regulations that the Federal Retail Excise Tax is not imposed upon the retailer as a privilege tax for doing business, but is specifically imposed upon the article sold. It is to be included in the price to the purchaser or consumer and therefore collected from the purchaser or consumer and held by the retailer to be accounted for and remitted to the Federal Government. Under the circumstances it is a mistake to say that the Federal Retail Excise Tax is a part of the expense of sale made by the retailer, because in no way is he obligated to make such outlay and in no way is he responsible for the tax, except that he is a conduit through whom the tax passes from his purchaser to the Federal Government.

In Indian Motorcycle Co. v. United States, 283 U.S. 570, 51 S.Ct. 601, 602, 75 L.Ed. 1277, in referring to this tax it was said: "We think it is laid on the sale, and on that alone."

As was pointed out in the case of Standard Oil Co. v. State, 283 Mich. 85, 276 N.W. 908, 911, "The federal excise tax is a sales tax itself—not a tax on manufacturer —and does not attach until the instant the sale is made; that the state sales tax attaches at the same instant, namely, upon consummation of the last sale prior to use or consumption".

To the same effect see Standard Oil Co. of Indiana v. State Tax Com'r, 71 N.D. 146, 299 N.W. 447, 135 A.L.R. 1481.

In Title 26 U.S.C.A. § 2409, the statute makes it mandatory upon the merchant to inform the consumer that the price paid by the consumer includes the Federal Tax. Failure of the merchant, directly or indirectly, to so inform the consumer or attempt to conceal from the consumer that he is paying the Federal excise tax incurs severe penalty against the merchant. In the light of this provision, it would not be a cost or expense to the merchant when it is paid by the consumer with full knowledge that he is paying the Federal excise tax on the article purchased.

Two Alabama cases relied on by the State upon further reflection are now regarded by us as not in point. In Pure Oil Co. v. State, 244 Ala. 258, 12 So.2d 861, 148 A.L.R. 260, the tax imposed by the State of Alabama was a privilege tax upon any person, firm or corporation selling illuminating, lubricating or fuel oils at wholesale, that is in quantities of 25 gallons or more, requiring them to pay to the Revenue Department for the use of the State of Alabama the sum of one-half of one percent on his gross sales for the preceding year. The wholesaler attempted to deduct from his gross receipts a 4¢ per gallon tax invoiced separately by him and imposed by the Federal Government on a manufacturer, producer, or importer. The tax was specifically imposed by the Federal Statute on the manufacturer, or producer and to be collected from him. This tax was in no way similar to the luxury tax imposed upon any article of jewelry sold. The distinction is obvious. The 10% or 20% luxury tax on any article of jewelry sold is similar in many respects to our own sales tax which the seller is required to collect from the purchaser. Section 776, Title 51, Code of 1940. In the Pure Oil Co. case, this court said:

"In essence appellant seeks deductions from his 'gross sales' for other items of taxation levied against him and paid by him. None of these items are levied against the purchaser. He is not the taxpayer. Appellant could not collect a tax from him, as such. They are unlike our sales tax upon retailers. True, the economic burden of the tax is generally passed on to the purchaser, and finally to the consumer. We make no criticism of making invoices disclose the tax burdens of the seller, rendering the public tax-conscious, maybe reacting on legislative bodies when framing tax laws. But in fact and in law these other tax items are legal obligations of appellant, constituting, in economic sense, part of

the overhead of the seller's business, as does the tax here sued for. Invoices or bookkeeping cannot change the fact that the purchaser is paying the sales price fixed by the seller, nothing more nor less. They cannot stipulate the purchaser into the position of a taxpayer, and the seller into the position of a tax collector. The tax is payable to the State only, and by the seller. In the absence of statute authorizing such deductions, the 'gross sales' must include what the words import, namely, the gross prices paid for the products named when purchased in wholesale quantities as defined by the statute." Pure Oil Co. v. State, 244 Ala. 258, 12 So.2d 861, 862.

Likewise in Merchants Cigar & Candy Co. v. City of Birmingham, 245 Ala. 587, 18 So.2d 137, a stamp tax was levied on the wholesaler for the privilege of engaging in business. Again this court distinguishes such a tax from the Alabama Retail Sales Tax and so in principle from the Federal Luxury Tax.

"* * * There is no law or ordinance which requires him to collect a similar amount from the purchaser, by adding it to the sales price, or otherwise, as is required under the General Sales Tax law. Section 776, Title 51, Code of 1940. * * * The collection of it as a tax from the purchaser was appellant's own system not required by the State Revenue Department, nor by law or ordinance and has no effect on the instant question. Pure Oil Co. v. State, 244 Ala. 258, 12 So.2d 861, 148 A.L.R. 260. The tax is levied on the seller as any other tax against him. He could absorb the amount of it without increasing the sale price. There is no law which directs him to pass it on as a tax to his purchaser. But 'the price is the total sum paid for the goods. The amount added because of the tax is paid to get the goods and for nothing else. Therefore it is part of the price.' Lash's Products v. United States, 278 U.S. 175, 49 S.Ct. 100, 73 L.Ed. 251."

In the Pure Oil case and the Merchants Cigar & Candy Co. case the tax was upon the seller. Here the luxury tax is a tax upon the sale and must be collected from the buyer. Where the tax is imposed upon the article sold and does not attach until the instant the sale is made and is required to be collected from the purchaser, it cannot be an expense to the retailer within the definition of gross receipts. Standard Oil Co. of Indiana v. State Tax Com'r of North Dakota, 71 N.D. 146, 299 N.W. 447, 135 A.L.R. 1481.

■ Since the Federal Retail Excise Tax or Luxury Tax is not an expense within the meaning of the Alabama Statutes to which we have referred and is not an amount on which the Alabama Sales Tax should be computed, Ross Jewelers, Inc. should not have collected a sales tax of $2 on the hypothetical watch, but should have assessed an Alabama Sales Tax on the $100.00 less the amount of the Federal tax, which is set up in the foregoing hypothetical case as amounting to $9.09. In other words, the Alabama Sales Tax if properly computed should have been $1.84 on the watch.

■ But in the instant case Ross Jewelers did collect $2 on the price of $100 Federal Tax included, when it collected from its customers. We strongly feel that since Ross Jewelers did collect a $2 sales tax on each watch which is 16¢ on each watch more than it should have collected, but only remitted $1.84 to the State Department of Revenue until under the assessment it paid the full amount of $2 as a sales tax on each watch, it is not now entitled to any refund for these excessive amounts collected from its customers. As between Ross Jewelers and the State, such excess collections should belong to the State. We do not have before us in this proceeding the parties from whom the excessive collections were made. There appears to be no way in which the excessive amount can be refunded to them. It would be an unjust enrichment for us to allow Ross Jewelers, Inc. to be the beneficiary of this fund. It did not part with any of its funds in remitting to the State Department of Revenue. In the case

of Kesbec, Inc. v. McGoldrick, City Compt., 278 N.Y. 293, 16 N.E.2d 288, 119 A.L.R. 536, it was held that a dealer who had collected from customers by reason of an improper interpretation by the municipal authorities of municipal sales tax legislation an amount in excess of the lawful tax, which amount he had been legally required to deposit with the comptroller, in order to obtain a review of the assessment was, by reason of the want of beneficial interest, not entitled to its return and also that he could not keep such excess collection. See also Shannon v. Hughes & Co., 270 Ky. 530, 109 S.W.2d 1174; Kesbec v. McGoldrick, 278 N.Y. 293, 16 N.E.2d 288, 119 A.L.R. p. 542 et seq.

Under § 140, Title 51, Code of 1940, if it is the opinion of the court from all the evidence that the assessment is too high, it shall fix the amount of such assessment. It is further provided that if upon appeal the assessment made by the department of revenue is reduced, the court upon proof of payment of the tax, shall ascertain and determine by its judgment or decree the amount of the tax which was invalid or which was excessive and upon presentation of a certified copy of the judgment to the comptroller, it shall be the duty of the comptroller to draw his warrant upon the treasurer in favor of such taxpayer for such an amount as the judgment of the court shall ascertain or declare has been erroneously paid to the state. The state warrant of the comptroller shall be paid out of any funds in the treasury as a current obligation of the year in which the refund is ordered. We feel that under the facts in this case, while the court will decree that the assessment as made by the State Department of Revenue is too high, we do not feel that the excessive amounts collected by the appellant from its customers have been erroneously paid to the state, because they were collected as sales tax and for aught that appears were collected as trustee for the State of Alabama and accordingly the court will have the power to enter its decree, reserving such excessive amounts to the state, in accordance with the principles which we have stated above. State **v.**

Louis Pizitz Dry Goods Co., 243 Ala. 629, 11 So.2d 342.

The decree of the lower court was a decree sustaining the demurrer to the bill of complaint. The court did not specify on what grounds of demurrer its ruling was based. The demurrer raising the foregoing question was addressed not only to the bill as a whole, but to each aspect of the bill. Section 140, Title 51, Code of 1940, provides that if from all the evidence the court is of the opinion that the assessment is either too high or too low, it will fix the assessment. It further provides that if the assessment is reduced, it shall be the duty of the comptroller to draw his warrant on the treasurer in favor of the taxpayer for such an amount as the judgment of the court shall ascertain and declare has been erroneously paid to the state. We consider that the effort to procure a remission of the excessive payments does not constitute a separate aspect of the bill. On the contrary it is but an incident in the procedure if the court reduces the assessment and holds that these amounts have been erroneously paid to the state. We, therefore, are justified in referring the decree of the lower court to any ground of demurrer addressed to the bill generally and since we think, as we have stated above, that the taxpayer is not entitled to a refund of excessive amounts of sales taxes, which it has collected, the decree of the lower court should be sustained. Smith-Howard Gin Co. v. Ogletree, 251 Ala. 366, 37 So.2d 507; Grady v. Williams, Ala. Sup., 70 So.2d 267.

The case of Onderdonk v. Cochran, 248 Ala. 619, 28 So.2d 918, is not contrary to the present opinion. In that case the tax was levied upon the defendants as sellers and distributors of beer in the County of Mobile, Ala., and not against a retailer of beer to whom the beer was sold by the distributors. In the present case the tax is laid against the customers of the retailer and not the retailer, the only duty or obligation of the retailer in the present case being to collect the tax from its customers and remit such collections to the State.

It is conceded by Ross Jewelers, Inc., that it owed the amount of the sales tax assessed

against it, which was $6006.21, except $1244.18, which it disputes. Accordingly it seriously insists that since it offered to pay so much of the assessment as was not disputed with lawful interest, it should not be liable for a penalty of one-half of one percent per month on the uncontested part of the assessment. In other words, it is insisted that there is no propriety in requiring that it be penalized on the uncontested sum as a price of litigating the contested amount.

In Birmingham Vending Co. v. State, 251 Ala. 584, 38 So.2d 876, this court refers to the fact that the foregoing statute provides for a mandatory penalty where, after audit a demand is made upon the taxpayer for the amount of an additional tax and the taxpayer fails or refuses to pay the same within ten days from the date of such demand. In the foregoing case this court on appeal assessed the penalty in accordance with the statute. The allegations of the bill show that the demand was made on December 10, 1948, and that no part of the tax was paid to the State Department of Revenue until after a final assessment and on or about November 5, 1949, when the same was paid as a condition precedent to the perfecting of an appeal, instead of the filing of a supersedeas bond.

The period covered by the sales tax, as has been shown, was from November 21, 1946, through July 31, 1948. This case therefore involves the statute in force at the time of the delinquency and the case of Birmingham Vending Co. v. State, supra, is conclusive of the question. In other words, we do not deal here with the statute as it was amended by Act approved July 27, 1951. See Code of 1940, Title 51, § 766, Pocket Part p. 298.

It is insisted that since the State Department of Revenue had no authority to accept a lesser undisputed sum and allow Ross Jewelers to protest the disputed sum, this constitutes a sale of justice in violation of Section 13 of the Constitution. In other words, according to the contentions of appellant, this amounts to an exacting of a pecuniary consideration in the form of a payment on the undisputed part as a price of obtaining justice on the disputed part. There is no merit in this position. In Ex parte State ex rel. Attorney General, 252 Ala. 149, 39 So.2d 669, 672, this court said, "It is within legislative competency to require the payment of taxes as a condition precedent to an action questioning the amount of taxes due." In the foregoing case the court further said:

"The question of the severability of section 140, supra, does not arise in this case for the reason that, that part of the section requiring the payment of the taxes before delinquent or the posting of a supersedeas bond as a condition precedent to an appeal from a final assessment of the Department of Revenue does not violate any section of the State or Federal Constitution urged against its validity."

In the case just quoted from the court relied on and quoted from a case of Campbell v. State, 242 Ala. 215, 5 So.2d 466; which in turn quoted from the case of State v. Bley, 162 Ala. 239, 50 So. 263, as follows: "In State v. Bley, 162 Ala. 239, 50 So. 263, it was held that neither due process nor the right of trial by jury required the grant to a taxpayer of the right to appeal to a court to have an assessment reviewed by it."

In the case of State v. Ide Cotton Mills, 175 Ala. 539, 57 So. 481, 482, this court in dealing with the right of appeal from a tax assessment said: "The right of appeal in such proceedings is a right conferred by statute, and must be exercised in the mode and within the time prescribed by the statute."

The original opinion of the Court is withdrawn. This substituted opinion is filed; modifying and extending the original opinion as herein set forth. The judgment of the lower court is affirmed and the application for rehearing is overruled.

All the Justices concur, except that LIVINGSTON, C. J., and SIMPSON, J., dissent as to that phase of the opinion which deals with the right of appellant to a refund of the amount paid by it to the State Department of Revenue.

CLAYTON, J., not sitting.