STEAGALL, Justice.
The City of Birmingham appeals from the summary judgment in favor of Alabama Gas Corporation (hereinafter referred to as “Alagaseo”) in Alagasco’s action for a declaratory judgment. At issue is the definition of “gross receipts” under Ala.Code 1975, § 11-51-129.
Section 11-51-129 permits municipalities to charge utilities a license tax of no more than three percent “of the gross receipts of the business done by the utility in the municipality during the preceding year.” The City of Birmingham interpreted “gross receipts” to include the amounts Alagaseo is required to collect from its customers for the State of Alabama pursuant to Code § 40-21-80 et seq., the Utility Gross Receipts Act. That Act contains a schedule under which Alagaseo must add to its customers’ monthly charges up to four percent of Alagasco’s monthly gross receipts for sales or receipts not exceeding $40,000. Code § 40-21-82. The Act specifically states that “[a]ll taxes paid in pursuance of this article shall be conclusively presumed to be a direct tax on the purchaser precol-lected for the purpose of convenience and facility only.” Code § 40-21-86. Alagaseo has paid this money directly to the State since September 1, 1969 (the effective date of the Act), and has never treated it as revenue.
Nevertheless, on August 28, 1987, Birmingham assessed Alagaseo $480,833.34 on a retroactive basis for the three percent license tax computed based on the amount of the gross receipts tax Alagaseo had collected from 1982 through 1986 and remitted to the State. Birmingham also sought a penalty of $120,220.83 covering those years for a total assessment against Ala-gasco of $601,104.17.[1] The trial court held that the assessment was invalid and permanently enjoined Birmingham from including in its license tax computations the utility gross receipts taxes Alagaseo collects for the State.
Although the Alabama cases on which the trial court relied dealt with the scope of the term “gross receipts” as it is used in the sales tax context, we consider the reasoning in those cases applicable to the present case. Merchants Cigar & Candy Co. v. City of Birmingham, 245 Ala. 587, *417 18 So.2d 137 (1944); Ross Jewelers v. State, 260 Ala. 682, 72 So.2d 402 (1953); and State v. Automatic Sales, 277 Ala. 63, 167 So.2d 146 (1964), distinguished between a tax levied on a seller (which tax is not required to be passed on to the purchaser) and a tax levied on the consumer. That is, if the tax was imposed directly on the consumer, with the seller acting merely as a conduit for the state, then the revenues generated were not included in the seller’s “gross receipts” in computing the Alabama sales tax.
Merchants Cigar & Candy Co., supra, involved a city license tax levied on wholesale sellers of tobacco products. The sellers were not required to include the tax in their retail sales prices. The appellant, however, argued that, because it charged retailers a stamp tax on each package sold, it was a “collection agency” for the State and city as to the stamp tax and that the money collected was not a part of its gross receipts. This Court disagreed and held that the fact that the appellant chose to pass the tax on to the retailers did not affect the nature of the tax as being one on the seller rather than one on the consumer. Thus, the stamp tax was held to be part of the appellant’s gross receipts.
On the other hand, Ross Jewelers, supra, involved a federal retail excise tax that was levied not on the seller but on the article sold and, thus, was not included in the retailers’ gross receipts:
“It will be noticed ... that the Federal Retail Excise Tax is not imposed upon the retailer as a privilege tax for doing business, but is specifically imposed upon the article sold. It is to be included in the price to the purchaser or consumer and therefore collected from the purchaser or consumer and held by the retailer to be accounted for and remitted to the Federal Government. Under the circumstances it is a mistake to say that the Federal Retail Excise Tax is a part of the expense of sale made by the retailer, because in no way is he obligated to make such outlay and in no way is he responsible for the tax, except that he is a conduit through whom the tax

passes from his purchaser to the Federal Government.

[[Image here]]
“In the Pure Oil [Co. v. State, 244 Ala. 258, 12 So.2d 861 (1943),] case and the Merchants Cigar & Candy Co. case the tax was upon the seller. Here the luxury tax is a tax upon the sale and must be collected from the buyer. Where the tax is imposed upon the article sold and does not attach until the instant the sale is made and is required to be collected from the purchaser, it cannot be an expense to the retailer within the definition of gross receipts.”
260 Ala. at 689-90, 72 So.2d at 406-08 (citation omitted) (emphasis added). See, also, State v. Automatic Sales, supra, (if license/privilege tax is added to retail sales price, it becomes part of gross receipts to be used as a measure for state sales tax).
We are unpersuaded by Birmingham’s reliance on City of Birmingham v. Stacy Williams Co., 356 So.2d 608 (Ala.1978). One of two Alabama sales taxes was specifically excluded from the definition of “gross receipts” in Birmingham’s license code. The sales tax Stacy Williams Company was required to pay was not mentioned in the exclusions; nonetheless, Stacy Williams argued that the sales tax it paid should also be deducted from its gross receipts. This Court disagreed and held that the express intent of the license code was that only the sales tax expressly excluded from the license code was to be excepted from Stacy Williams’s gross receipts.
We do not have the situation here where one of two similar taxes is specifically mentioned in a list of exceptions to the exclusion of the other tax. Rather, the utility gross receipts tax is a tax levied on the consumer and does not constitute “business done” by Alagasco in the municipalities across the state. See Ala.Code 1975, § 11-51-129 (“[t]he maximum amount of privilege or license tax which the several municipalities within the state may annually assess and collect of [utilities] ... shall not exceed three percent of the gross receipts of the business done by the utility in *418 the municipality during the preceding year”). (Emphasis added.) Moreover, the utility gross receipts tax is itself a tax on gross receipts. Thus, to include that amount in Alagasco’s gross receipts for “business done” in the several municipalities would artificially inflate the “gross receipts” figure and cause it not to reflect Alagasco’s actual gross receipts for business done.
Consequently, the judgment of the trial court is affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, ALMON and ADAMS, JJ., concur.

. Although this is the figure in the trial court’s order, it appears that the two separate sums do not add to this total. However, no issue is made concerning that discrepancy.