PER CURIAM.
The Alabama Alcoholic Beverage Control Board (“Board”) petitioned this Court for certiorari review of the judgment of the Court of Civil Appeals holding that the Board’s retail sale of alcoholic beverages violated Article IV, § 93, Alabama Constitution of 1901. We granted the writ, and we now reverse that holding. However, we affirm a separate aspect of that judgment.
The Court of Civil Appeals issued an opinion affirming in part and reversing in part the judgment of the Montgomery Circuit Court. In its opinion, the Court of Civil Appeals set out the following procedural history:
“On November 3, 1988, Jean Bartlett, d/b/a Package Palace, filed a complaint in the Montgomery County Circuit Court naming [as defendants] the ABC Board; Tandy D. Little, individually and in his official capacity as the Administrator of the ABC Board; Audrey C. Wright, individually and as a member of the ABC Board; *954 Don M. Martin, individually and as a member of the ABC Board; Guy Hunt, in his official capacity as Governor of the State of Alabama; and George C. Wallace, Jr., in his official capacity as Treasurer of the State of Alabama, as defendants.
“Bartlett’s complaint alleged, inter alia, that the ABC Board’s operation of retail liquor stores for the sale of alcoholic beverages, after 1980, violated Article IV, § 93, Alabama Constitution of 1901; that the ABC Board had overcharged retailers by failing to pass on the discounts that it received from manufacturers and by taxing on the overcharged amounts; and that the ABC Board lacked authority to buy or sell any product other than alcoholic beverages.
“Bartlett’s complaint requested, inter alia, that the trial court order: (1) that the ABC Board cease the retail sale of alcoholic beverages, as well as the retail sale of non-alcoholic items in the ABC Board’s liquor stores; (2) that the ABC Board refund the discounts it had received from various liquor companies but had failed to pass on to the retail and wholesale purchasers; and (3) that the ABC Board pay all costs of this proceeding, including reasonable attorney fees. On October 2,1989, the parties stipulated to the facts and the legal issues involved in this action.
“On March 30, 1990, the trial court entered an order which addressed the constitutional issue and continued the matter for a ruling on all other pending issues. The trial court held that ‘the continued sale of intoxicating liquors after the enactment of Act No. 80-529 does not violate Article IV, § 98 of the [Alabama Constitution of 1901] in that intoxicating liquors are regulated within the police powers of the State.’ The trial court held, however, that ‘[t]he sale of any other items by [the ABC Board’s retail liquor stores] which contain no alcoholic content (i.e., bartending guides, non-alcoholic mixers, soft drinks, etc.) is not included in the police power of this State and therefore is prohibited by Article IV, § 93 of the Constitution.’
“On March 2, 1993, the trial court entered an order which found that ‘[i]t is ■undisputed that in the fiscal years 1983 to 1988, the ABC Board received a total of $1,936,219.34 in discounts from various liquor companies. It is also undisputed that the ABC Board did not consider any discount it received on purchase of spirituous liquors in establishing the wholesale and retail price of liquors.’
“The trial court further found that ‘the ABC Board [had] been granted the intrinsic power to determine the price of all spirituous and vinous liquors’ and held that ‘any decision to pass along discounts [was] within the discretion of the [ABC Board].’ The trial court found in favor of the defendants on all remaining issues and taxed costs against Bartlett.
“Bartlett appeals and presents this court with only two issues: (1) whether the ABC Board’s operation of state liquor stores engaged in the retail sale of alcoholic beverages violates Article IV, § 93, Alabama Constitution of 1901, and (2) whether the ABC Board was required to take into consideration all discounts it had received on the purchase of alcoholic beverages when establishing the wholesale and retail price of those alcoholic beverages.”
Bartlett v. Alabama Alcoholic Beverage Control Board, 683 So.2d 947, 948 (Ala.Civ.App. 1994).
In its opinion, the Court of Civil Appeals noted that, after the adoption of Act No. 80-529 (“the 1980 Act”), individuals, businesses, and corporations within Alabama, licensed by the Board, were permitted to sell at retail alcoholic beverages for off-premises consumption. The court concluded that “these private retail liquor stores and the ABC Board’s retail liquor stores are engaged in the same business and are in competition with each other.” 683 So.2d at 950 (citing State Dep’t of Revenue v. B & B Beverage, Inc., 534 So.2d 1114 (Ala.Civ.App.1987))[1].
*955 The court held that “the operation of the state liquor stores for the retail sale of liquor and other alcoholic beverages constitutes a business activity in competition with other business activities in private enterprise and is prohibited by, and in violation of, Article IV, § 98, Alabama Constitution of 1901.” 683 So.2d at 951. (Emphasis original.) The Court of Civil Appeals dealt with the fact that in setting the wholesale and retail prices of liquor sold to private retailers and to the public, the Board had failed to pass on certain discounts it had received from various liquor companies. The Court held that, given its holding that the Board had been engaged in private enterprise during the years in question, the Board was “under no obligation to pass on the' discounts of almost $2,000,000 it received between 1988 and 1988, the amount stipulated to by the parties.” 683 So.2d at 952.
The holding that the Board’s retail sale of alcoholic beverages violates § 93 is based on the court’s implicit conclusion that the legislature impliedly repealed at least two provisions authorizing the Board to sell alcoholic beverages and to distribute net profits (§§ 28-3-43 and 28-3-74, Ala.Code 1975). Further, the court distinguished on its facts State ex rel. Wilkinson v. Murphy, 237 Ala. 332, 186 So. 487 (1939), which was decided at a time when the State authorized only the Board to sell alcoholic beverages. Additionally, the court relied on Associated Industries of Alabama, Inc. v. Britton, 371 So.2d 904, 907 (Ala.1979); that ease, however, did not reflect all of the factors to be considered in determining whether legislation violates § 93.
In determining whether the State’s operation of liquor stores in conjunction with the licensing of private retailers violates § 93, we must examine that constitutional provision. Section 93, as amended by Amend. 58, provides in pertinent part:
“The state shall not engage in works of internal improvement, nor lend money or its credit in aid as [sic] such, except as may be authorized by the Constitution of Alabama or amendments thereto; nor shall the state be interested in any private or corporate enterprise, or lend money or its credit to any individual, association, or corporation, except as may be expressly authorized by the Constitution of Alabama, or amendments thereto.”
The clause at issue here — “nor shall the state be interested in any private or corporate enterprise” — “has been construed to mean ... that the State may not engage, alone or in concert with others, in business of a type generally characterized as private enterprise.” Edmonson v. State Industrial Development Autk, 279 Ala. 206, 210, 184 So.2d 115,118 (1966)[2] (citing Murphy, supra).
In State ex rel. Wilkinson v. Murphy, supra, this Court held that the phrase at issue here is “broad enough to embrace a business operated solely by the State for trade and traffic.” 237 Ala. at 335,186 So. at 490. The Court nevertheless concluded that the “police power over liquor traffic is wholly uninfluenced and unaffected by any constitutional provision.” 237 Ala. at 341, 186 So. at 496. The Court explained that “police power is inherent in the government, and while it may be set aside by the Constitution, yet in order to find that it has been so set aside the Constitution must plainly so indicate.” Id. The Court of Civil Appeals stated:
“The holding in Murphy was predicated on the fact that the State prohibited the sale of ‘intoxicating liquors by private individuals or corporations ... ’ and on the fact that the State provided for the sale of intoxicating liquors solely through state stores.’ Murphy, 237 Ala. at 339, 186 So. at 495 (emphasis added [by the Court of Civil Appeals]). Those facts ceased to exist after the enactment of the 1980 Act and the coming into existence of the privately owned retail liquor stores.”
683 So.2d at 950.
The holding in Murphy was that “[the] police power over the liquor traffic is wholly *956 uninfluenced and unaffected by any constitutional provision.” 237 Ala. at 341, 186 So. at 496. The Murphy court stated, “[I]t is the peculiar function of the lawmakers to ascertain and determine when the welfare of the people requires the exercise of the State’s police powers, and what are appropriate measures to that end, subject only to the power of the courts to adjudge whether any particular law is an invasion of rights secured by the Constitution.” 237 Ala. at 338, 186 So. at 493.
Bartlett urges that the legislature repealed the statutes authorizing the operation of State liquor stores. The repealer clause of the 1980 Act, § 27, specifically repealed §§ 28-3-70 through -73 Ala.Code 1975, but these are not the only Code sections pertaining to the operation of the State liquor stores. For instance, § 28-3-43 provides that the Board shall have the power to “buy, manufacture and sell alcoholic beverages and to have alcoholic beverages in its possession for sale, as defined and enumerated in this chapter.” See § 28-3-43(a)(l). Additionally, § 28-3-74, providing for the distribution of net profits from proceeds of Board stores, remains in effect.
To conclude that the legislature intended to'withdraw the Board’s authorization to operate liquor stores, this Court would have to conclude that the 1980 Act on the one hand and §§ 28-3-43 and 28-3-74 on the other hand are “so repugnant to each other that they [are] irreconcilable.” Hurley v. Marshall County Commission, 614 So.2d 427, 430 (Ala.1993). Additionally, as this Court stated in Merrell v. City of Huntsville, 460 So.2d 1248, 1251 (Ala.1984), “repeal of a statute by implication is not favored, ... and a prior act is not repealed unless provisions of a subsequent act are directly repugnant to the former.” See also City of Tuscaloosa v. Alabama Retail Ass’n, 466 So.2d 103, 105-06 (Ala.1985) (“the degree of conflict required between two statutes in order to declare that one impliedly repeals the other is that of irreconcilability” and “ ‘repeal by implication is not favored in the law” ”).
It is presumed that the legislature did not intend to make any alteration in the law beyond what it declares either expressly or by unmistakable implication. Beasley v. MacDonald Engineering Co., 287 Ala. 189, 249 So.2d 844 (1971). This Court is bound to presume that the legislature had knowledge of State ex rel. Wilkinson v. Murphy, 237 Ala. 332,186 So. 487 (1939), when it amended the 1937 Act in 1980. Wright v. Turner, 351 So.2d 1 (Ala.1977). The language of the 1980 Act does not indicate that the State liquor stores were abolished when the operation of privately owned stores was approved; it appears from the Act that privately owned stores were to be permitted to operate in conjunction with State-owned liquor stores.
In Associated Industries of Alabama, Inc. v. Britton, 371 So.2d 904 (Ala.1979), the Court upheld the “Prison-Made Goods Act of Alabama,” (Ala.Acts 1976, No. 286). The plaintiffs argued that the Act violated § 93. This Court, referring to In re Opinion of the Justices No. 68, 247 Ala. 66, 22 So.2d 521 (1945), stated the test to be “whether the operation of the enterprise was designed to make a profit.” Britton, 371 So.2d at 907. This Court in Britton stated:
“The Act itself belies any purpose to operate the program for profit. Its stated intent is ‘self-maintenance’ and reimbursement, not profit. Its announced ‘primary objective’ is ‘vocational training and rehabilitation.’ Sales upon the open market are prohibited. Thus, it is neither a ‘business enterprise’ nor one which ordinarily might be expected to be undertaken for profit.”
Id. (emphasis original) (citing, with the signal “cf,” In re Opinion of the Justices No. 126, 256 Ala. 170, 54 So.2d 68 (1951)). The Court noted in Britton that the Act limited the sale of the products to State and local governmental agencies only.
The Court of Civil Appeals read Britton as holding that the State is operating a business enterprise in violation of § 93 if a State activity involves sales upon the open market and is undertaken for profit. In determining whether the Prison-Made Goods Act violated § 93, this Court also examined the primary purpose of the Act:
“Any ‘profit’ seemingly generated through such an operation, whether used to pur *957 chase supplies or placed in the State General Fund, must be considered with the purpose of the Aet[,] that is, to rehabilitate the inmates and to reimburse the state. Speculation concerning the state’s profit-making potential in such an undertaking, we respectfully suggest, is not an acceptable substitute for evidence of profit (‘gross’ or ‘net’) itself after considering the cost of law enforcement and institutional operation.”
Britton, 371 So.2d at 907.
Also, in Britton this Court reaffirmed the principle that “[t]he police power of the state is co-extensive with the public interest to be safeguarded” and concluded that in regard to the Prison-Made Goods Act the generation of profit “is a secondary consideration, the primary aspect of the legislation being well within the police power and, accordingly, constitutionally permissible.” 371 So.2d at 907. As this Court explained in Murphy, the interest referred to in the phrase “nor shall the state be interested in any private ... enterprise”:
“is a pecuniary interest in any private or corporate enterprise, and this prohibition was, we think[,] inserted in our organic law as a limitation upon the power of the legislature to again place our State in business enterprises and in competition with private individuals or corporations; or to undertake those things which ordinarily might, in human experience, be expected to be undertaken for profit or benefit to private promoters.”
237 Ala. at 335, 186 So. at 490. That language is quoted in Britton, and there, regarding the Prison-Made Goods Act of Alabama, the Court stated:
“Applying this postulate to the enterprise at hand, [we conclude that] clearly it is not constitutionally offensive under Section 93. The Act itself belies any purpose to operate the program for profit. Its stated intent is ‘self-maintenance’ and reimbursement, not profit. Its announced ‘primary objective’ is “vocational training and rehabilitation.’ Sales upon the open market are prohibited. Thus it is neither a ‘business enterprise’ nor one which ordinarily might be expected, to be undertaken for profit. Cf. Opinion of the Justices, 256 Ala. 170, 54 So.2d 68 (1951). Indeed, the products may be sold only to state and local government agencies and, hence, cannot reasonably be viewed as creating a state interest in private or corporate enterprise.”
371 So.2d at 907. (Emphasis original.) An examination of whether an act of the legislature violates § 93 must include a consideration of the purpose of the act itself.
Based on the foregoing discussion, we reverse that portion of the judgment of the Court of Civil Appeals holding that the Board’s retail sale of alcoholic beverages violated § 93 of our State Constitution.
The Court of Civil Appeals also held that the Board was under no obligation to pass on to customers discounts amounting to nearly $2,000,000 between 1983 and 1988. The court based this holding on its conclusion that the Board’s stores had been operating as private enterprises. The Court of Civil Appeals quoted the trial court’s order:
“On March 2, 1993, the trial court entered an order which found that ‘[i]t is undisputed that in the fiscal years 1983 to 1988, the ABC Board received a total of $1,936,219.34 in discounts from various liquor companies. It is also undisputed that the ABC Board did not consider any discount it received on [the] purchase of spirituous liquors in establishing the wholesale and retail price of liquors.’
“The trial court further found that ‘the ABC Board [had] been granted the intrinsic power to determine the price of all spirituous and vinous liquors’ and held that ‘any decision to pass along discounts [was] within the discretion of the [ABC Board].’ The trial court found in favor of the defendants on all remaining issues and taxed costs against Bartlett.”
683 So.2d at 948.
We agree that the trial court’s holding that whether to pass along those discounts was within the discretion of the Board. Accordingly, we hold that the Board is under no obligation to pass along those discounts; we affirm that portion of the Court of Civil *958 Appeals’ judgment so holding, even though that court stated an incorrect rationale.
The judgment of the Court of Civil Appeals is therefore affirmed in part and reversed in part.
AFFIRMED IN RESULT IN PART; AND REVERSED IN PART.
SHORES, KENNEDY, INGRAM, COOK, and BUTTS, JJ., concur.
MADDOX, J., concurs specially.
HOUSTON, J., concurs in the result.
HOOPER, C.J., dissents.

. In B & B Beverage, the question before the Court of Civil Appeals was "not one of how — in what mode or manner — the liquor traffic can be controlled, [but] one of equal protection of the law regarding an unequal taxation arrangement.” 534 So.2d at 1116 (citing State ex rel. Wilkinson v. Murphy, 237 Ala. 332, 186 So. 487 (1939)).

. In Edmonson, this Court reviewed Act No. 662, Ala.Acts 1965 (Reg.Session), creating a public corporation known as the State Industrial Authority, composed of the director of the State Planning and Industrial Development Board, the director of revenue, and the director of finance. We concluded that Act No, 662 did not authorize the State or the Authority to engage in private enterprise and noted that the Authority uses the proceeds from the sale and issuance of its bonds to make grants to local public bodies.